IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KIMBERLY W., | § | |
|     PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-1634-G-BK |
| | § | |
| COMMISSIONER, SOCIAL SECURITY | § | |
| ADMINISTRATION, | § | |
|     DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this appeal of the denial of Plaintiff's application for Social Security disability benefits is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons that follow, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

## I. BACKGROUND

    *A. Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her applications for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act") and for supplemental security income under Title XVI of the Act. Doc. 1, *passim*. Plaintiff completed her application in March 2021, alleging disability beginning in May 2013, based on GERD, migraine headaches, and problems with her upper and lower back. Doc. 11-1 at 204-06, 249. Her claim was denied at the administrative level, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g).

### B. Factual Background

Plaintiff was 55 on her alleged onset date, has a high school education, and previously worked as a customer service representative at a call center. Doc. 11-1 at 250, 260.

Plaintiff's relevant medical history is detailed in medical records dating from 2021. In February of that year, Plaintiff saw Dr. Stephen L. Katzen, M.D., complaining of a six-month history of cervical and low back pain with radiculopathy. Doc. 11-1 at 331. Her surgical history included both cervical and lumber fusions. Doc. 11-1 at 334. Plaintiff reported that she had a "dull ache" radiating in her left arm as well as left hand numbness. Doc. 11-1 at 331.

Dr. Katzen's examination revealed reduced strength in her left bicep and triceps and reduced left dorsiflexion and plantar flexion. Doc. 11-1 at 334. A subsequent CT scan of Plaintiff's lumbar spine showed a stable discectomy and fusion at L5-S1, mild disc bulge at L1-L2, mild degenerative facet joint hypertrophy at L2-L2, moderate degenerative facet joint hypertrophy at L3-L4, and mild degenerative spondylosis at L1-L2 and L3-4. Doc. 11-1 at 361. An MRI of her lumbar spine yielded similar findings, as well as grade 1 degenerative spondylosis at L3-L4. Doc. 11-1 at 363. A CT scan of Plaintiff's cervical spine revealed a discectomy and fusion at C5-C6 and C6-C7, mild disc bulge at C4-C5, and mild degenerative spondylosis at C3-C4 and C4-C5. Doc. 11-1 at 362. And an MRI of her cervical spine showed mild posterior central disc protrusion at C7-T1 and mild degenerative spondylosis at C7-T1. Doc. 11-1 at 364.

At a follow-up appointment, Dr. Katzen noted, Plaintiff's MRI "does show some mild to moderate canal stenosis and foraminal stenosis but otherwise I believe that [Plaintiff] would be a good candidate for pain management." Doc. 11-1 at 329-30. And he referred her accordingly. Doc. 11-1 at 330.

In February 2022, Dr. Carol Eades, M.D., reviewed Plaintiff's medical evidence at the reconsideration stage of the disability benefits application process.[1]  Doc. 11-1 at 107-14.  Dr. Eades found that Plaintiff could perform light exertional work subject to certain limitations, *inter alia*, that Plaintiff could stand and/or walk (with normal breaks) no more than approximately six hours in an eight-hour workday and could sit (with normal breaks) for no more than the same amount of time, and further limiting Plaintiff to (1) occasional climbing, stooping, and crawling, (2) unlimited kneeling and balancing, and (3) frequent crouching.  Doc. 11-1 at 111.

In September 2022, Plaintiff saw Dr. Bobby Hyunh, M.D., for a consultative examination, complaining of leg, lumbar back, and neck pain.  Doc. 11-1 at 340-43.  She reported a history of pain in both legs that was exacerbated by walking and radiated from her hips to her feet.  Doc. 11-1 at 340.  She indicated numbness in her left leg and weakness in both legs.  Doc. 11-1 at 340.  Plaintiff stated her back pain was alleviated by lying down but, like her neck pain, worsened with activity, including walking.  Doc. 11-1 at 340.  Plaintiff described her pain as "aching and sharp," "[u]ncontrolling [sic], aching and shooting," and rated it as six or seven, and as much as 10, on a 10-point scale.  Doc. 11-1 at 340.

At the time of the consultative examination, Plaintiff reported her pain was at level five on a 10-point scale, which was exacerbated by movement of her arms and alleviated by resting.  Doc. 11-1 at 340.  Plaintiff reported surgery in 2011, which helped, and that she had also seen a neurosurgeon.  Doc. 11-1 at 340.

Upon examination, Dr. Huynh assessed decreased range of motion in Plaintiff's spine, sacroiliac joints, and hips, and further noted abnormalities in Plaintiff's ability to squat and toe

---

[1] Plaintiff was evaluated at the initial level as well, but it was then determined that there was insufficient evidence and thus no RFC was assessed.  Doc. 11-1 at 26.

3

walk. Doc. 11-1 at 342. With respect to conventional walking and tandem walking, Plaintiff's examination was normal but with "slow cadence." Doc. 11-1 at 342. Dr. Huynh thus opined that, *inter alia*, Plaintiff has the ability (1) to sit for no more than 30-40 minutes at one time without interruption and no more than six hours total in an eight-hour workday; (2) stand for no more than 30 minutes at one time without interruption and no more than six hours total in an eight-hour workday; (3) walk no more than 30 minutes at one time without interruption and no more than six hours total in an eight-hour workday; and (4) occasionally climb stairs or ramps, but never balance, stoop, kneel, crouch, crawl, or climb ladders or scaffolds. Doc. 11-1 at 347; 350. Contemporaneous x-rays showed a prior L4-S1 fusion, no fracture or subluxation, and mild loss of height at L1-L2. Doc. 11-1 at 345. At bottom, he opined that Plaintiff's limitations have lasted or will last for at least 12 consecutive months. Doc. 11-1 at 351.

### C. The ALJ's Findings

In January 2023, the Administrative Law Judge (ALJ) found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had severe impairments of: (1) spondylosis of the cervical spine status post C5-7 anterior cervical discectomy and fusion; (2) lumbar degenerative disc disease status post L5-S1 anterior lumbar interbody fusion and L4-S1 laminectomies; (3) post-laminectomy syndrome; (4) sacrococcygeal disorder; and (5) trochanteric bursitis of the bilateral hips. Doc. 11-1 at 22. The ALJ concluded, however, that none of Plaintiff's severe impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable regulations. Doc. 11-1 at 22-23. The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, subject to certain limitations:

> [S]he can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk 6 hours in an 8-hour day; and sit 6 hours in an 8-hour

>  day. She can occasionally climb ramps and stairs; should never climb ladders, ropes or scaffolds; and she can occasionally balance and stoop, but should never kneel, crouch or crawl. The claimant can occasionally push and/or pull with the bilateral upper extremities. She can frequently operate foot controls bilaterally. The claimant can occasionally reach and frequently handle, finger and feel bilaterally. She is precluded from concentrated exposure to unprotected heights and hazardous machinery with moving mechanical parts.

Doc. 11-1 at 23. The ALJ further found that Plaintiff was capable of performing her past relevant work as a customer service specialist and thus is not disabled. Doc. 11-1 at 27-28.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do his past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden on the first four steps. *Id.* (citation omitted). The burden then shifts to the Commissioner to "prove the claimant's employability." *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted). The Court can neither "reweigh the evidence or substitute its judgment for the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only if no credible evidentiary choices or medical findings support the decision." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

### III. ANALYSIS

Plaintiff first argues that the ALJ erred by failing to explain why she did not adopt certain limitations in Dr. Huynh's "persuasive" opinion—the limitation to sitting for no more than 30-40 minutes at one time and the limitation to never balancing or stooping. Doc. 14 at 12-15. In other words, because her RFC does not include these limitations from a medical source opinion that the ALJ found persuasive, she contends that the ALJ had a duty to explain why she was not adopting these limitations and erred in failing to do so. Doc. 14 at 12-15. Defendant counters that: (1) The ALJ was not required to provide such an explanation, Doc. 18 at 10 (citing *Silva v. Kijakazi*, No. 22-51045, 2023 WL 3723628, at *1 (5th Cir. May 30, 2023) (per curiam)), and (2) "several of the limitations Plaintiff points to are already arguably contained in the ALJ's RFC determination," Doc. 18 at 11.

For background, residual functional capacity, or RFC, is defined as the most that a person can still do despite recognized limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ's RFC determination is a combined "medical assessment of an applicant's impairments with descriptions by physicians, the applicant, or others of any limitations on the applicant's ability to work." *Hollis v. Bowen*, 837 F.2d 1378, 1386-87 (5th Cir. 1988) (per curiam).

Although the ALJ need not address every piece of evidence, she must provide enough explanation "to allow the court to undertake a meaningful review of whether [her] reasoning was

supported by substantial evidence." *Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *adopted by,* 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021); *see also Price v. Astrue*, 401 F. App'x 985, 986 (5th Cir. 2010) ("The ALJ does not need to comment on every piece of evidence, but only must build an accurate and logical bridge between the evidence and the final determination.). The Court "cannot build a logic bridge based on pure speculation and *post hoc* rationalizations." *Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (citations omitted).

Here, the ALJ's decision does not explain why certain limitations set forth in Dr. Huynh's opinion were not adopted, although as to Plaintiff's physical limitations, the ALJ found Dr. Huynh's opinion "persuasive" because "he conducted a comprehensive physical examination of [Plaintiff] in addition to reviewing imaging of her spine." Doc. 11-1 at 27.

In describing the relevant limitations that Dr. Huynh assessed, the ALJ wrote:

> [Plaintiff] can occasionally lift/carry up to 10 pound; sit for a total of 6 hours in an 8-hour workday; stand for 6 of 8 hours; and walk for 6 of 8 hours. . . . He stated she can occasionally climb stairs and ramps, but never climb ladders or scaffolds, balance, stoop, kneel, crouch, or crawl. . . .

Doc. 11-1 at 26. However, absent from the ALJ's recitation of Dr. Huynh's findings were the limitations that Plaintiff cannot sit for more than 30-40 minutes at one time, stand for more than 30 minutes at one time, and walk for more than 30 minutes at one time. Nor is there any explanation in ALJ's decision, including the broader discussion of Plaintiff's RFC, why Dr. Huynh's opinion was omitted in this regard.

Further, Defendant's contention that Plaintiff's RFC "arguably" encompasses these limitations is conclusory and unsupported. Likewise, Defendant's reliance on *Silva* is misplaced. Here, unlike in *Silva*, the ALJ did not find the relevant portions of the state agency consultant's opinions to be non-persuasive (i.e., the limitations regarding how

7

long Plaintiff can sit, stand, and walk at one time). Rather, she simply did not discuss the limitations at all. *See Russano*, 2024 WL 3614731, at *15 (distinguishing *Silva* on the same basis). *Cf. Castillo*, 599 F. Supp. 3d at 489 (emphasizing that an ALJ must explain "*why* he omitted *any* mental limitations from the residual-functional-capacity formulation" after finding such limitations credible earlier in the sequential analysis) (emphasis in original).

Accordingly, on this record, the Court concludes that the ALJ's omission of Dr. Huynh's additional limitations, without explanation, is error.[2] *See Russano v. O'Malley*, No. CV 23-1353, 2024 WL 3614731, at *15 (E.D. La. May 8, 2024) (finding that the ALJ erred in failing to explain why certain limitations from a state agency medical consultant's opinion were excluded from the plaintiff's RFC "especially where the ALJ found the consultant's opinion persuasive"), *adopted by*, 2024 WL 3595605 (E.D. La. July 31, 2024); *see also Audrey M. D. v. Comm'r of Soc. Sec.*, No. 3:21-CV-02425-B-BT, 2022 WL 18356464, at *3 (N.D. Tex. Dec. 28, 2022) (Rutherford, J.), *adopted by*, 2023 WL 223178 (N.D. Tex. Jan. 17, 2023) (Boyle, J.) (ALJ erred when she found that claimant suffered from non-severe mental impairments resulting in mild limitations but failed "to explain why she omitted [these] mental limitations from the RFC formulation or the hypothetical to the VE"); *Castillo v. Kijakazi*, 599 F. Supp. 3d 483, 489 (W.D. Tex. 2022) (ALJ erred because, although acknowledging that Castillo was at least mildly limited in her mental functioning, "absent from the ALJ's opinion is an explanation for

---

[2] Because the Court concludes that remand is warranted on this issue alone, Plaintiff's additional arguments are not reached.

why these mental limitations should not be reflected in Castillo's residual functional capacity.").

Nevertheless, the Court must determine whether Plaintiff was prejudiced by such error. *Graves v. Colvin*, 837 F.3d 589, 593 (5th Cir. 2016) ("The party seeking to overturn the Commissioner's decision has the burden to show that prejudice resulted from an error.") (quoting *Jones v. Astrue*, 691 F.3d 730, 734–35 (5th Cir. 2012)). An error is harmless only "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).

"The ALJ has a responsibility to adequately explain his reasoning in making the findings on which his ultimate decision rests, and in doing so must address all pertinent evidence. The Court's inability to clearly determine whether the ALJ adequately considered certain limitations or not constitutes reversible error." *Gonzales v. Berryhill*, No. 3:16-CV-1830-BN, 2017 WL 3492215, at *6 (N.D. Tex. Aug. 15, 2017) (Horan, J.); *Russano*, 2024 WL 3614731, at *15 (concluding the same). Whether intentional or an oversight, the ALJ's failure to explicitly consider the limitations regarding how long Plaintiff can sit, stand, or walk at one time as set forth in Dr. Huynh's opinion, which the ALJ otherwise determined was credible, affected Plaintiff's substantial rights and warrants remand.

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings.

**SO RECOMMENDED** on August 23, 2024.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).